# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 16-1714V
### (Not to be Published)

* * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| REGINA FOSTER, *on behalf of and as mother and natural guardian of,* H.G., *a minor*, | |
| | Special Master Corcoran |
| Petitioner, | Filed:  January 2, 2018 |
| v. | Decision; Interim Attorney's Fees and Costs. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Alix Christian Michel,* Michel & Ward, PC, Chattanooga, TN, for Petitioner.

*Debra Begley*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION MAKING INTERIM AWARD OF ATTORNEY'S FEES AND COSTS[1]

On December 29, 2016, Regina Foster filed a petition on behalf of her minor daughter, H.G., seeking compensation under the National Vaccine Injury Compensation Program.[2] The Petition alleged that Gardasil vaccines that H.G. received on October 29, 2014, January 6, 2015, February 4, 2015, and November 2, 2015, precipitated an autoimmune injury affecting the

---

[1] Although this decision has been designated as not to be published, it will nonetheless be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the ruling will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public in its current form. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

autonomic nervous system, characterized by symptoms of postural orthostatic tachycardia syndrome (POTS). *See* Petition at 1 (ECF No. 1).

For the reasons stated below, I hereby **GRANT** Petitioner's Motion, awarding attorney's fees in the total amount of $18,216.17.

## Procedural History

Petitioner's counsel, Mr. Alix Michel, began work on the case on April 19, 2016, eight months before the claim was filed. During that time, Mr. Michel billed about half of his total hours (approximately 25 hours). *See* Application for Fees and Costs, dated Nov. 13, 2017 (ECF No. 17) ("Fees App.") at 10-15. It appears that the time was well-spent as Petitioner was able to file most of the medical records and the statement of completion within four months of the initial filing of the petition. The claim was not filed under any pressure of a looming limitations deadline.

Shortly thereafter, Respondent filed his Rule 4(c) Report contesting entitlement and noting that additional medical records were missing. *See* Rule 4(c) Report, dated June 16, 2016 (ECF No. 12). I held a status conference on July 11, 2017, at which time I informed Petitioner that she would need to file an expert report to connect the factual underpinnings of the case to a causation theory. Petitioner undertook to find such an expert report, but was unable to do so. After expressing my concerns about the viability of the claim in a status conference held on October 13, 2017, without the expert report I had previously ordered, Petitioner's counsel chose to withdraw from the case, and Petitioner now plans to proceed with her claim *pro se*.

Petitioner has now filed the instant motion for an interim award of attorney's fees and costs. *See generally*, Fees App. Petitioner initially requested reimbursement of interim attorney's fees and costs in the combined amount of $15,398.17 ($14,056.00 in attorney's fees, plus $1,342.17 in costs). Fees App. at 1. Respondent filed a brief in reaction to the original application on November 27, 2017, stating that the claim did not have reasonable basis because H.G. seemed to have preexisting conditions, no doctors diagnosed her with the injury alleged, and based on *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632 (Fed. Cir. 2017), counsel's diligent investigation of the claim is not relevant to the claim's reasonable basis. *See* Response to Attorney's Fees and Costs, dated Nov. 27, 2017 (ECF No. 18).

Petitioner filed a reply arguing that reasonable basis existed while Mr. Michel pursued the claim, and pointed to record evidence supporting that claim. *See* Reply, dated Dec. 4, 2017 (ECF No. 19) ("Reply"). These arguments included that one of Petitioner's treating physicians, Dr. Svetlana Blitshteyn, consistently noted that H.G. suffered a form of dysautonomia—POTS. Reply at 2. Petitioner also cited to specific medical records where different physicians noted that POTS

was H.G.'s diagnosis, to counter Respondent's point that no provider had diagnosed H.G. with POTS. *Id*. at 4. It is unclear if these diagnoses were made by the physicians or based on the report made by Petitioner, however. In response to arguments made that H.G. had pre-existing headaches, Petitioner explained that the reference by Respondent was unsubstantiated by any additional records and thus should not be determinative of reasonable basis. *Id*. at 5-6. Petitioner's counsel further argued that his investigation into the matter is indicative that he made efforts to explore the claim's viability. *Id*. at 6. After the need for subsequent filings, Petitioner made a supplemental fees request, adding $2,818.00 to her prior request (reflecting costs associated with litigating this matter). *See* Supplemental Application for Fees, dated Dec. 8, 2017 (ECF No. 22) ("Supp. App.").

I recently held a status conference in the case to discuss with Petitioner her plan to continue with her case without an attorney. While I indicated that I had concerns about the viability of the claim, I did not state that reasonable basis was an issue (although I emphasized that an expert report would be necessary to continue) and encouraged Petitioner to seek further attorney representation. *See* Order, dated Dec. 15, 2017 (ECF No. 23).

**Analysis**

I. **Reasonable Basis Standard**

I have in prior decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed "reasonable basis."[3] *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906 at 4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances." The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

---

[3]Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

The Court of Federal Claims recently provided further illumination as to the standards that should be used to evaluate if the totality of the circumstances warrant a finding that reasonable basis existed. *Cottingham v. Sec'y of Health & Human Servs.,* No. 15-1291V, 2017 WL 4546579, at *10 (Fed. Cl. Oct. 12, 2017). As Judge Williams therein stated, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id*. at *5.

## II. Petitioner's Claim Has Sufficient Reasonable Basis for a Fees Award

Based on my review of the case history, coupled with the evidence of counsel's course of representation of Petitioner as set forth in the billing records, I find that the claim did possess reasonable basis, despite my concerns about its viability moving forward.

I agree with Respondent that this claim has some evident deficiencies. But it has long been understood that the *success* of a claim is not determinative of the claim's reasonable basis—an inquiry which considers primarily whether objective proof exists to support it, given the "totality of the circumstances." *See Livingston v. Sec'y of Health & Human Servs*., No. 12-268V, 2015 WL 4397705, at *6 (Fed. Cl. Spec. Mstr. June 26, 2015) ("An assessment of reasonable basis looks not to the likelihood of success but more to the feasibility of the claim" (internal quotation marks omitted)). Here, that test is satisfied, and therefore the case had sufficient reasonable basis for a fees award.

Furthermore, I do not find persuasive Respondent's invocation of *Simmons* in support of his argument that fees should not be awarded in this case. Respondent argues that *Simmons* rejected the idea that an attorney's diligent investigation meant that the claim had reasonable basis—although it is likely relevant to the issue of good faith. But, *Simmons* is best understood to hold that the pending expiration of the Act's limitations period is *by itself* not grounds for a reasonable basis finding, as it does not constitute objective evidence in support of the claim. *Simmons*, 875 F.3d at 635. *Simmons* does not expressly (or even impliedly) abrogate the "totality of the circumstances" test – and therefore does not mean that the circumstances informing an attorney's investigation of a claim's bases (including the fact that an attorney may have insufficient time to complete that investigation due to the need to file a claim expeditiously) are irrelevant. Rather, it emphasizes the need, at bottom, for petitioners to locate objective proof supporting a claim – an inquiry that can take time, as recognized in other decisions observing that claims can possess reasonable basis but then "lose" it later after additional facts are adduced. *See, e.g., Curran v. Sec'y of Health & Human Servs.*, No. 15-804V, 2017 WL 1718791, at * 3 (Fed. Cl. Spec. Mstr. Mar. 24, 2017), *aff'd in part and remanded on other grounds*, 130 Fed. Cl. 1 (2017); *Pannick v. Sec'y of*

4

*Health & Human Servs.*, No. 16-0510V, 2016 WL 8376894, at *2 (Fed. Cl. Spec. Mstr. Nov. 8, 2016).

In this case, counsel was attempting to obtain such proof, in the form of an expert opinion. Counsel thus acted appropriately in attempting to represent Petitioner while taking note of my concerns about the claim's viability. As the billing record reveals, Mr. Michel expeditiously reviewed Petitioner's claim and worked to determine its likelihood of success. *See generally* Ex. A to Fees App. Counsel relied not simply on statements of the Petitioner but on actual objective record proof, while subjecting the questionable or weaker kinds of that evidence to reasonable investigatory testing. He also sought withdrawal promptly once he had exhausted his attempts to obtain an expert report.

### III.   Calculation of Fees Award

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera,* 515 F.3d at 1348 (Fed. Cir. 2008, citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). As the Federal Circuit stated in *Avera*, inclusion of the *Davis* exception ensures against a "windfall" – meaning paying a lawyer in a rural or less expensive locale more than she would otherwise earn, simply because she is litigating a case in a court of national jurisdiction. *Avera,* 515 F.3d at 1349.

After the hourly rate is determined, the reasonableness of the total hours expended must be determined. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205-06 (2009). This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 437(1983).

With all of the above in mind, I turn to Petitioner's request for a rate of $275 per hour for Mr. Michel for work performed in 2016-2017. Mr. Michel practices in Chattanooga, Tennessee,

and is explicitly not requesting forum rates, as his work was not performed in Washington, DC, and in recognition that his firm's rate are significantly different from the forum rates thus not prompting the *Davis* exception to apply. Fees App. at 6. I applaud Mr. Michel for thoughtfully considering the appropriateness of the forum-rate to his firm's location. I also appreciate that Mr. Michel billed appropriate tasks at a paralegal rate of $85 per hour rather than his full attorney rate.

I do not find any particular billing entries to be objectionable for either the original or supplemental applications. I also find that the costs expended on the matter are reasonable. Accordingly, I award a total of $18,216.17 (representing $16,874.00 in attorney fees and $1,342.17 in costs).

## CONCLUSION

For the aforementioned reasons, I award a total of $18,216.17 as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, Alix Michel, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.